FILED

05/19/2017

Clerk of the
Appellate Courts



IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 26, 2017

**STATE OF TENNESSEE v. KEVIN SCOTT BURRIS**

**Appeal from the Circuit Court for Blount County**
**No. C-21692 Tammy M. Harrington, Judge**
_____

**No. E2016-01508-CCA-R3-CD**
_____

Kevin Scott Burris' ("the Defendant") community corrections officer filed an affidavit, alleging that the Defendant had violated the conditions of community corrections. Following two hearings, the trial court revoked the Defendant's community corrections supervision and ordered him to serve the balance of his sentence in confinement. On appeal, the Defendant argues that the trial court abused its discretion by ordering him to serve his sentence in confinement. After a review of the record and applicable law, we conclude that the trial court did not abuse its discretion. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

J. Liddell Kirk (on appeal), Knoxville, Tennessee and Mack Garner, District Public Defender (at trial), for the appellant, Kevin Scott Burris.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Matthew L. Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. Factual and Procedural Background

On March 13, 2014, the Defendant pleaded guilty to promotion of methamphetamine manufacture, a Class D felony, and conspiracy to manufacture five grams or more of methamphetamine, a Class C felony. The trial court sentenced the Defendant to an effective sentence of three years to be served on supervised probation. The Defendant's probation was revoked, and he was transferred to community corrections. On February 19, 2016, the Defendant's community corrections officer filed an affidavit, stating that the Defendant violated Rule 1 by failing to comply with curfew, violated Rule 5 based on a positive drug screen for amphetamines and methamphetamine, and violated Rule 6 for associating with persons of ill repute. A warrant was issued by the circuit court on the same date. On April 4, 2016, the trial court held a hearing and found that the Defendant had violated the conditions of his community corrections.[1] On July 8, 2016, a second hearing on the warrant was held to determine the punishment for the violation.

At the start of the second hearing, the following exchange took place:

> [DEFENDANT'S COUNSEL]: [If the] Court please, if I may make a short opening statement, as the General may need to, but I think we can shorten most of it down. We had a hearing on a Community Corrections Violation on April 4, 2016.
>
> THE COURT: We did.
>
> [DEFENDANT'S COUNSEL]: The Court found that [the Defendant] had violated his probation – first Community Corrections, found that this was the second violation. His first having been found on the 11th day of July, looks like, 2014. And I think he was given a split confinement and transferred to Community Corrections, if I'm remembering that right. The Court -- I can't remember if it was by agreement of the parties and by suggestion of the Court, but the court found that Mr. Burris did not seem to have a very good plan of --

---

[1] The transcript from the April 4, 2016 hearing in which the trial court revoked the Defendant's community corrections is not included in the record on appeal. However, the Defendant has not appealed the trial court's revocation of his community corrections, only the trial court's order requiring him to serve the balance of his sentence. We can glean sufficient information from the transcript of the July 8, 2016 hearing to address the issues raised by the Defendant in this appeal.

THE COURT: He did not.

[DEFENDANT'S COUNSEL]: -- how he was going to proceed once he got out of jail. The Court was not very happy with Mr. Burris at that time.

THE COURT: Didn't he get involved in something along the lines of some outpatient treatment or some --

[DEFENDANT'S COUNSEL]: Exactly. So, the case was reset to a date early in June. We were attempting to find inpatient treatment while he was in jail, and the General and I had agreed to reset it to this date. But we have been unable to make that work, I think because he had been in jail for so long that they won't do inpatient treatment. So, we're back here to finish the hearing. I would like to put Mr. Burris on for just three or four questions and then have the Court do whatever.

It looks like he's been in jail – I wrote it down -- since --

THE COURT: Well, I guess my question would be if he doesn't qualify for inpatient, I mean, what's the plan?

[DEFENDANT'S COUNSEL]: If the Court please, he's been in jail since like February. [W]e're going to be asking the Court to sentence him to six months, to return him to Community Corrections, he has a place to live, and he is going to try to get into an outpatient program to be approved by Community Corrections once he's out of jail and able to do that.

THE COURT: That's not any different, though, than what the plan was when I did the hearing.

. . .

[ASSISTANT DISTRICT ATTORNEY]: Yes, Your Honor. I would just clarify, this is actually violation number three. He had pled guilty in 2014. Within two months he was in custody on his violation that he submitted to for 180 days. He then -- now, that was July 2014. He was placed on enhanced after that 180 days. He then had another violation with 120 days and placed on Corrections. And here we are on this sentence, as well. So, the State would just renew its request that the sentence come to its conclusion, Your Honor, that he be revoked.

- 3 -

The Defendant then testified. He stated that two weeks after he was incarcerated he began attending Narcotics Anonymous (NA). He said the "chaplain put [him] in a Beyond Addiction class." The Defendant said that he had been trying to find an inpatient program to enter upon his release. During direct examination, the Defendant's counsel stated that his "impression" was that when the Defendant was previously in court, "[the Defendant] really didn't think [he] had a problem." The Defendant's counsel then asked, "What's changed[?]" The Defendant answered: "My head's got a little clearer and these classes I've been taking and listening to other people's stories and me being out of denial and telling my own story has put it in perspective for me." The Defendant said that he goes to NA meetings once a week, attends church, and has not had any write-ups during his incarceration. The Defendant said that if he were released he would live with his grandparents, which he said was a "stable home where there's no drugs[.]"

On cross-examination, the Defendant admitted that he was living with his grandparents when he committed the criminal charges for which he was on probation and when he had the prior violations. The Defendant agreed that he had a previous positive drug screen for amphetamines and methamphetamine. He also agreed that he had "never taken any steps . . . to undergo any treatment," explaining "[he] never had [his] head clear enough to do it on [his] own."

Following argument, the trial court stated:

This case is on, 21692, [the Defendant], having previously bifurcated the hearing wherein the Court had previously found that the Defendant had violated the terms and conditions of Community Corrections. Note for the record that this was the third violation. I remember and recall the details of this hearing extremely well.

The Court was extremely concerned about [the Defendant] not really addressing with any particular seriousness the depth of the drug problem, given the nature of his criminal conviction for identity theft and manufacture of methamphetamine, and then as well as the fact the seriousness of it was a third violation. It was a violation of Community Corrections. And it just still didn't seem to hit that the problem was serious. I actually, against my better judgment, reset the case to allow him an opportunity to come up with a better plan than what was presented on that day, given once again the nature of it being the third violation.

So, we are now here for hearing today, a continuation of that hearing. For the purposes of the record, the Court notes that nothing really

has changed since the time that we were here before, as far as any specific plan. It's the same plan. And as the General had pointed out, it's the same residence where these issues -- he was living. It's the same circumstances for which he'd been released before, that the Court is once again asked to do again. And to do that on a third violation, given the history of his case -- he's only been sentenced 2014, March 13th, 2014, three violations -- the Court cannot based upon the proof that's been presented here today in good faith release [the Defendant] back. And so, therefore, he is revoked to serve the balance of his sentence.

This timely appeal follows.

## II. Analysis

On appeal, the Defendant argues that the trial court abused its discretion in ordering the Defendant to serve the balance of his sentence in confinement. The State argues that the trial court properly exercised its discretion in sentencing the Defendant. We agree with the State.

The Defendant has not appealed the trial court's finding that the Defendant violated the terms and conditions of his community corrections supervision or the revocation of his community corrections. If a defendant violates the terms of supervision, the trial court may, within its discretionary authority, revoke the community corrections sentence and require the defendant to serve his sentence "for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." Tenn. Code Ann. § 40-36-106(e)(4) (2014). The trial court may resentence a defendant or, as the trial judge did in this case, impose the initial sentence. We will not disturb the trial court's ruling on appeal absent an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). To establish an abuse of discretion, a defendant must show that there is "no substantial evidence" in the record to support the trial court's decision. *Id.* (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)). If the record clearly shows that "the trial judge exercised conscientious judgment in making the decision rather than acting arbitrarily[,]" there is no abuse of discretion. *State v. Leach*, 914 S.W.2d 104, 107 (Tenn. Crim. App. 1995). In this case, there was overwhelming evidence supporting the trial court's judgment requiring the Defendant to serve the balance of the sentence. The trial court bifurcated the revocation hearing to allow the Defendant an additional opportunity to present a plan for rehabilitation if he were released. The trial court did not act arbitrarily in ordering the Defendant to serve the balance of his sentence. There is no merit to Defendant's argument.

- 5 -

### III. Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE